EDWIN TOMLINSON *vs.* THE OUSATONIC WATER COMPANY.

The plaintiff for a small consideration conveyed to the defendants the right to flow his land by the erection of a dam across a river and the defendants executed to him a bond in the penal sum of $1,000, with the following condition: "The condition of this obligation is such, that whereas the said *T.* has con-

veyed to the *O. W. Co.* the right of flowage of his land lying &c., and whereas on the southerly side there is a bank wall on which stands the carriage house of said *T.;* and whereas the flowage of said land may injure said wall and carriage house; *and whereas the O. W. Co. has undertaken, and does hereby undertake and agrees, forever to protect and maintain said wall* against all damage resulting from the water and ice in said river while said dam shall remain standing: Now if the said *O. W. Co.* shall well and truly maintain said wall and repair all injury that may so result, then this bond shall be void; otherwise in force." Held that by this instrument the defendants had, in addition to the obligation of the bond as such, covenanted to protect and maintain the wall in question, so long as the dam remained standing.

COVENANT; brought to the Court of Common Pleas of New Haven County. The obligation upon which the suit was brought was as follows:

"Know all men by these presents, that we, the Ousatonic Water Company, a corporation located in the town of Derby, are holden and firmly bound unto Edwin Tomlinson, of the town of Seymour, in the penal sum of one thousand dollars, to be paid to him or his certain attorney, executor, administrator, or assigns; to which payment, well and truly to be made, we, the said obligors, do bind ourselves, and each of us, our heirs, executors, and administrators, and each and every of them, firmly by these presents. Signed with our hands and sealed with our seals, at Derby, this 15th day of March, 1869. The condition of this obligation is such that, whereas the said Edwin Tomlinson has released and conveyed to the said Ousatonic Water Company the right of flowage of all his land lying between the Ousatonic River and the highway or river road, so called; and whereas, on the southerly side of said highway and near the dwelling house of said Tomlinson, there is a bank wall, on which stands the carriage house of said Tomlinson; and whereas, on the northeasterly side of said road the said Tomlinson has a well and a dwelling house, and cellar under the same; and whereas, the construction of said dam and the consequent flowage of the said land between said river and said river road may endanger or injure said wall or said carriage house and the said well and cellar; and whereas, the Ousatonic Water Company has undertaken, and does hereby undertake and agrees, to forever protect and maintain said wall and said carriage house, and said well and

cellar, against all injury and damage resulting from the water and ice in said river while said dam shall remain standing: —Now if the said Ousatonic Water Company shall well and truly forever maintain said wall and said carriage house, and said well and cellar, from any and all damage by reason of water and ice from said river, and shall repair all injury that may result by reason of water and ice from said river, and fully protect and save said Tomlinson, his heirs and assigns, from all injury and damage that may result from water and ice from said river, then this bond shall be void; otherwise to remain in full force and effect in law."

The particular breach charged was the neglect of the defendants to protect the wall and carriage house, and the well and cellar, from injury by the water and ice in the river, and to repair the same when so injured. The pleadings resulted in a demurrer by the defendants to a replication of the plaintiff, and on this demurrer the case was reserved for the advice of this court. The facts presented by the pleadings are sufficiently stated in the opinion.

*D. Torrance*, with whom was *W. B. Wooster*, in support of the demurrer.

*H. Stoddard*, contra.

PARK, C. J. In view of the claims of the opposing parties in this suit with regard to the construction to be given to the contract which is the subject of the suit, it seems strange that either party could have been satisfied with the contract as it was drawn. The object they were seeking to accomplish was, the providing for a reasonable compensation to the plaintiff for an apprehended injury to his wall, carriage house, well and cellar, from the erection of the defendants' dam. If the agreement was, as the plaintiff claims it to have been, one which created a perpetual liability on the part of the defendants to make good all the damage to his property as it should occur from time to time, a contract could easily have been drawn setting forth this agreement in unmistakable terms.

So on the other hand, if the agreement limited the responsibility of the defendants to damages not exceeding in the aggregate the sum of one thousand dollars, as the defendants claim, these terms could easily have been so clearly expressed in the contract as to have prevented all controversy as to its meaning. But instead of doing this the parties put their agreement into the written contract which we have before us —a contract of doubtful construction, to say the least, unless it is read in the light of the surrounding circumstances. This we are required to do, and to ascertain as best we can what was the intention of the parties as expressed by their contract.

It appears that the plaintiff was willing to convey to the defendants the right to flow his land for a nominal consideration, but he desired compensation for, or security against, all damage to his bank wall, carriage house, well and cellar, which might be caused, and which there was reason to apprehend would be caused, by water and ice in times of freshet, if the right of flowage should be granted. It appears that the defendants were willing to pay a reasonable sum for such apprehended damage, but there was a difficulty in agreeing as to the amount. How great the injury probably would be was a matter of so much uncertainty, that all opinion in relation to it was but little more than speculation. It is easy to see that the parties entertained great difference of opinion on the subject, and could not agree as to the amount to be paid, else the right to flow would have been conveyed for a definite consideration, each party assuming the risk of the damages being more or less than the amount agreed upon.

In these circumstances the parties finally settled upon the contract now in question, leaving the damages to be determined thereafter as they should occur from time to time. The contract was made in the form of a bond, and a condition annexed, and it is this peculiarity of it which creates whatever uncertainty there is with regard to its construction. But when we consider that the plaintiff was conveying the right to flow for a nominal consideration, so far as the injury arising from the ordinary flowage of his land was concerned—was

doing an act which would probably bring upon him the apprehended injury to his property, it can hardly be supposed that he would understandingly have granted the right to flow without either full compensation *in presenti*, by the payment of a definite sum as damages, or *in futuro*, as the injury should occur from time to time. It can hardly be supposed that he would have agreed that if the damages in the aggregate should at any time exceed the sum of one thousand dollars, he would lose the excess, but if they should fall short of that sum, he would be satisfied with the actual damages whatever they might be. In such an agreement he would have everything to lose, and nothing to gain in respect to the risk, while the defendants would have everything to gain, and nothing to lose. It can hardly be supposed that the defendants would have asked for such an agreement, much less have expected that one would be made.

In view of these considerations, let us read the contract in question. Omitting the bond, and the recital of the conveyance of the right of flowage, and the description of the property which was to be protected, it proceeds as follows: "And whereas the Ousatonic Water Company has undertaken, and does hereby undertake and agrees, to forever protect and maintain said wall, and said carriage house, and said well and cellar, against all injury and damage resulting from water and ice in said river while said dam shall remain standing; now if the said Ousatonic Water Company shall well and truly forever maintain said wall and said carriage house and said well and cellar from any and all damage by reason of water and ice from said river, and shall repair all injury that may result by reason of water and ice from said river, and fully protect and save said Tomlinson, his heirs and assigns, from all injury and damage that may result from water and ice from said river, then this bond shall be void; otherwise to remain in full force and effect in law."

If we strike out from this language the clause "and does hereby undertake and agree," the remainder manifestly is nothing more nor less than the condition of the bond; and in that case the plaintiff's remedy would be on the bond.

But does this clause, with the words of the context which must be taken with it, form any part of the condition of the bond? The whole sentence would read as follows: "And the Ousatonic Water Company does hereby undertake and agrees to forever protect and maintain said wall and carriage house, and said well and cellar, against all injury and damage resulting from water and ice in said river while said dam shall remain standing." If this sentence stood alone, following as it does the statement as to the conveyance of the right to flow the plaintiff's land, which forms a part of the consideration for the making of the agreement, there could be no question but that it would be an independent, absolute, original undertaking to make good whatever damages might occur to the plaintiff's property from water and ice in the river, so long as the dam should remain on the stream. But this obligation is found in the instrument constituting the bond, with a condition annexed thereto, and it is said that if it be an original, independent undertaking, then we have the anomaly of two independent contracts in relation to the same subject matter in one instrument. The defendants insist that this clause is qualified by the words, "has undertaken," which immediately precede it, and should be construed in the same sense, as merely recognizing or stating an obligation already existing. It is exceedingly difficult to give it this construction without doing violence to the language. The clause makes no reference to the past, or to anything already existing. It says "does hereby undertake and agrees;" that is, does by this instrument undertake and agree. The expression is a strong one, and one which is commonly used to create an obligation, and not to acknowledge one already created. "You are *hereby* commanded" or "*hereby* directed," is the mandate of an officer to his subordinate when expressed in writing.

We think that, taking into consideration the relation of the parties, and the surrounding circumstances to which we have alluded, this clause was intended to create, and did create, an independent, original obligation on the part of the defendants; that is, independent of the rest of the instrument, and original, inasmuch as an obligation of this character had not been previously entered into in writing.

This view of the case seems to be in accordance with the view which the defendants themselves entertained of their liability originally, and for some time afterwards, for they on several occasions repaired slight injuries to the property without making any account of the expense, or causing any indorsement to be made on the bond. This action on their part is important, for it shows how they understood the contract at the time it was made.

The conclusion to which we have come may render it difficult to see what object the parties had in view in making the bond. They may have supposed the sum therein named would cover all the damage which would ever be done to the property, but, in order to provide against every possible contingency, may have made the obligation in its present form. Or they may have considered the bond as a continuing one to meet recurring injuries, and hence have designed, for purposes of security or otherwise, the two obligations to be co-extensive.

We express no opinion in regard to the bond, whether it would be satisfied by damages amounting in the aggregate to one thousand dollars; or whether it is a continuing bond, admitting of being broken from time to time, so long as the dam remains on the stream.

We advise the Superior Court that the replication is sufficient.

In this opinion the other judges concurred.