# Wheeling.

## RALPHSNYDER v. RALPHSNYDERS.

*(Absent, HAYMOND, JUDGE).

Decided November 13, 1880.

1880
Special Term.
Ralphsnyder
v.
Ralphsnyders.

John M. R. sold to Aaron, Alpha and William R., his sons, all of his real and personal estate upon the following conditions, to wit: For the payment of $1,500.00 to their three sisters, as set forth in deeds of conveyance executed to said sons by him and Elizabeth, his wife, for the maintenance and support of the said John M. R. and Elizabeth, his wife, and the sisters of the said three sons until the sisters got married. After the death of John M. R. and Elizabeth, his wife, Catharine, one of the sisters, who was still unmarried, filed her bill in equity to require the said sons (her brothers) to support her according to their said contract. The defendants claimed first, that equity had no jurisdiction, and second, that the true construction of said contract, released them from the support of said Catharine after the death of said John M. R. and Elizabeth, his wife. HELD:

1. Equity had jurisdiction.

2. The contract required the sons to support said Catharine "until she got married," and therefore they were not released therefrom by the death of said John M. R. and Elizabeth, his wife.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Monongalia, rendered on the 22d of September, 1876, in a cause in said court then pending, wherein Catharine R. Ralphsnyder was plaintiff, and Alpha and William Ralphsnyder were defendants, allowed upon the petition of the said defendants.

Hon. Charles S. Lewis, late judge of the second judicial circuit, rendered the decree appealed from.

*Related to some of the parties.

MOORE, JUDGE, furnishes the following statement of
the case:

This cause, which is now presented for our consideration upon an appeal from and *supersedeas* to a decree rendered by the circuit court of Monongalia county, September 22, 1876, was heretofore before this Court upon an appeal taken by the present appellants, Alpha and William Ralphsnyder, and was adjudicated by this Court as to the matters then presented by the record, at its July term, 1872, and is reported in 5 W. Va. 503, wherein a statement of the case is made, which obviates the necessity of a full statement here, except to set out at length the bond referred to in that statement, which is as follows:

"*Know all men by these presents*, That we, Aaron Ralphsnyder, William Ralphsnyder, and Alpha Ralphsnyder, are held and firmly bound unto John M. Ralphsnyder in the penal sum of $8,000.00, lawful money, to the payment of which, well and truly to be made, we bind ourselves, our heirs, executors and administrators, firmly by these presents. Sealed with —— seals and signed with our hands, and dated this 26th day of November, 1851.

"Whereas, The above named John M. Ralphsnyder has this day sold to said Aaron, William, and Alpha Ralphsnyder, his sons, all his estate, real and personal, upon the following terms and conditions, to wit: For the payment of $1,500.00 to their three sisters, as set forth and described in the deeds of conveyance executed this day to said Aaron, William and Alpha; the payment of $600.00 not mentioned in said deeds to their brother Franklin in a reasonable time, at the direction of his mother, Elizabeth Ralphsnyder, Sr.; for the maintenance and support of the said John M. Ralphsnyder, Elizabeth Ralphsnyder, and their three sisters, until they get married, and at which time to furnish each one of them, besides the amounts mentioned in the aforesaid

deeds, with an outfit of one feather-bed and bedding, one cow, six sheep, one breakfast-table, and set of *window-chairs*; to keep the said John M. and Elizabeth Ralphsnyder, their parents, in the peaceable and quiet possession of the house and lot and garden and other buildings, where they now reside, for and during their natural life, the whole control and management of which is to remain under their control as though the deeds of this day had never been executed nor entered into; and in all things to provide fully for the comfortable support of their parents and family as amply as they have heretofore been in the habit of living. On the faithful performance of all of which this bond to be void; otherwise to remain in full force and virtue in law and equity.

> "AARON RALPHSNYDER. [Seal.]
> "ALPHA RALPSNYDER. [Seal.]
> "W. M. RALPHSNYDER. [Seal.]"

To the original bill the defendants filed a demurrer, and for cause of demurrer alleged :

" That the said complainant has not, by her said bill, made such a case as entitles her in a court of equity to any discovery or relief from these defendants respectively, or any of them, or any relief against them, as to the matters contained in said bill, or any of such matters, and that any discovery which can be made by these defendants, or any of them, touching the matters complained of in said bill, or any of them, cannot be of any avail to the said complainant for any of the purposes for which a discovery is sought against these defendants by the said bill, nor entitle the said complainant to any relief in this Court touching any of the matters complained of therein. Wherefore, and for divers other good causes of demurrer appearing in the said bill, these defendants do demur thereto, and they pray the judgment of this honorable court, whether they shall be compelled to make any other and further answer to the said bill."

The circuit court overruled the demurrer; but this court reversed that ruling, and sustained the demurrer

upon the ground that the personal representative of John M. Ralphsnyder was not before the court, and remanded the cause with leave to amend the bill.

The complainant filed her amended bill at rules, January, 1873, making Alpheus Garrison administrator of the estate of John M. Ralphsnyder, deceased, a party, stating the former proceedings had in the cause, both in the circuit court and in this Court, and prayed that the record thereof be made a part of her amended bill, and that she be permitted to stand in the amended bill in the same place as plaintiff in the original bill, and to have the benefit of the proceedings upon it against the said defendant, Garrison, administrator, &c., as well as against the other defendants in said original bill; and prayed that she be allowed to prosecute the decree of the circuit court, and recover upon the same for her maintenance and support according to the provisions of said decree against the said defendants in her original bill, as well as against the defendant, Garrison; and for general and special relief.

The defendants, Alpha and William Ralphsnyder, filed a demurrer to the amended and original bills at the March term, 1873, similar to the former demurrer to the original bill, and also an answer to the amended bill, by which they make their answer to the original bill a part thereof, and deny the complainant's right to recover. On the 19th day of March, 1874, the circuit court overruled the demurrer.

The answer to the original bill, which was made a part of the answer to the amended bill, states that said Alpha and William and their deceased brother, Aaron, about November 26, 1851, made a contract and agreement with their father, John M. Ralphsnyder, and their mother, Elizabeth, whereby their father and mother were to convey by separate deeds to respondents and said Aaron, certain real and personal estate, mentioned and described in three deeds, official copies of which are exhibited with their answer, in consideration whereof

respondents and said Aaron then and there agreed to maintain and support their father and mother and their three sisters, during the lives of their father and mother respectively, at the house where they then resided, as amply as they had theretofore been in the habit of living; that the father and mother on the 26th of November, 1851, executed and delivered the three several deeds, and at the same time and as a part of the same transaction, respondents and Aaron made and delivered a bond to their mother in the penalty of $300.00, a copy of which they exhibit; that by the bond, filed with the complainant's bill, it was only intended upon the part of respondents and their father, that respondents and Aaron should bind themselves to support their said sisters, while they remain single, during the lives of their said parents, as will be seen by the terms and covenants of the bond made to their mother at the same time, and constituting one and the same transaction : "that if said bond to their father, by having therein after the word 'sisters' the words 'until they get married,' is susceptible of being construed to mean that respondents and said Aaron were to maintain and support their said three sisters longer than their said father and mother lived, it was a mistake in the use of language ; that during the life of their said father it was his understanding, as frequently expressed after the date of the bond and before his death, as well as the understanding of respondents, that by the said bond, made as aforesaid to their father and mother, they and the said Aaron were bound only to support their said sisters, if * * * they remained single during the lives of their father and mother, according to the contract above stated." `

Respondents further state, that their father and mother resided at the said house (mentioned in the bond) as long as they lived, and so also the plaintiff with them, and each and all were provided by respondents and said Aaron with a support as ample as they had theretofore been in the habit of having; that their mother died be-

fore their father, and he died December, 1866 ; that after the death of the father complainant claimed, that she was entitled to exclusive possession of the house and lot in the bond mentioned, but finding she was in error in that respect abandoned the property without consent of respondents, and claimed, that respondents and the estate of Aaron (he having died before his parents) were bound to support her during her life, unless she married; that respondents in the early part of 1867 agreed with complainant to submit to the judgment and award of Jesse Thorn, Silas Wisman and Abner Barnheart her said claim against them and Aaron's estate ; that said arbitrators adjudged and so awarded that respondents and said Aaron's estate should pay her $125.00 per annum from her father's death in lieu of said maintenance and support, of which respondents were to pay $50.00 each, and the estate of Aaron $25.00, the said amount to be paid in quarterly installments ; that respondents and complainant adopted the award, and respondents according to the award each paid to her $50.00 for the first year; that at the end of the first year respondents offered to pay her for the second year in accordance with said award, but she then disavowed said award, and refused to receive said money thereon ; that said William then resided in said house, and still resided there, and upon complainant refusing to longer abide the award respondents invited her to reside with William at the house, where their father and mother had lived and died, offering her the exclusive control and use of a sufficient and comfortable room therein, and to maintain and support her comfortably and amply, and offered to let her board with said William, and eat at his table, or that she should reside there and occupy said room and cook for herself, as she might see fit, respondents to furnish her with necessary provisions, &c. ; all of which she rejected and has refused to allow respondents to support or maintain her at said house, but demanded and required respondents to pay her, in lieu of the support offered and tendered,

large and unreasonable sums of money annually, which respondents deem unjust and inequitable. Respondents deny, that they have refused to furnish or purchase for her necessary provisions or material for clothing, as stated in the bill; also deny that they were ever required to pay the bills of J. E. Taylor & Son, and others, in the bill mentioned; nor do they admit that said bills, on the articles for which they were made, were just and necessary for plaintiff's comfort and support; they also deny that she is without means of support and is dependent upon her brothers, and deny that she is indebted to John Youst for her board since December 22, 1867, or that she owes him anything; and they allege that it would be unreasonable in any view to require them to pay $ 2.00 per week for her board; and they also deny that she is indebted for the store bills in her bill of complaint mentioned.

To respondents' answer to the original bill complainant replied, March 5, 1870, negativing said answer, and in conclusion repeated the prayer of the bill, that the cause be referred to a master to determine what amount is necessary and adequate for her support, and what amount had been paid her under defendants' obligation, and that they be compelled to contribute their just proportion to that end.

On the 20th day of March, 1876, the circuit court made an order referring the cause to a master-commissioner to ascertain and report:

"1. What amount was and is necessary and adequate for the comfortable support of the plaintiff, Catherine Ralphsnyder, by reason of the matters and things in the bill and proceedings mentioned.

"2. What amount the defendants, William and Alpha Ralphsnyder and John Youst, executor of Aaron Ralphsnyder, have respectively paid towards the support and maintenance of the plaintiff since the death of her father, when and how paid, and what amount was due from them respectively at the time of the institution of this suit, if

anything, on account of their said obligation marked 'A' and filed with the plaintiff's bill.

"3. What amount will be due from said Alpha and William Ralphsnyder and said John Youst, executor aforesaid, respectively for said maintenance and support at the time said commissioner shall complete his report on account of their said obligation marked 'A.'

"4. Anything else deemed pertinent by said commissioner or specially required by any of the parties."

The commissioner filed his report pursuant to said order, September 1, 1876, upon which the defendants endorsed four exceptions, all of which were overruled by the decree of the circuit court of September 22, 1876, and are omitted here, as the opinion of this Conrt sufficiently states them. On the 22d day of September, 1876, the circuit court rendered the following decree:

" This cause came on this day to be heard on the bill, answer thereto of the defendants, Alpha and William Ralphsnyder, replication thereto, amended bill, answer thereto, and replication to said answer, subpœnas duly served on all the defendants, decree *nisi* as to those not answering, depositions, exhibits, and upon all the pleadings and proceedings had heretofore, and papers heretofore filed in the cause, and upon the report of commissioner M. M. Dent, filed in the cause on the 1st day of September, 1876, and the exceptions thereto thereon endorsed ; and the court having seen and inspected said report and considered said exceptions thereto, doth overrule said exceptions and doth approve and confirm said report. On consideration whereof, it appears to the court that the defendants, Alpha Ralphsnyder and William Ralphsnyder, and, in his lifetime, Aaron Ralphsnyder bound themselves for the maintenance and support of the said plaintiff, Catharine Ralphsnyder, until she gets married, and that she still remains unmarried, and that for the support and maintenance of the said Catharine the sum of $150.00 per annum, as ascertained by commissioner Dent in his said report aforesaid, was and is

necessary to be furnished and paid for that purpose, and that of this sum the said William Ralphsnyder is liable to pay two fifths thereof, to wit, the sum of $60.00 per year, and that the defendant, Alpha Ralphsnyder, is liable to pay other two fifths thereof, to wit, other $60.00 per annum, and that the defendant, Elizabeth Jane Youst, is liable to pay the one fifteenth of said maintenance, to wit, the sum of $10.00 per year; and that the defendant, John Youst, is liable to pay for same one thirtieth part thereof, to wit, the sum of $5.00 per annum; and that the aggregate sums of principal and interest so due to said Catharine Ralphsnyder, on the 18th August, 1876, by reasons of the matters aforesaid, were as follows:

From defendant, William Ralphsnyder................$636 64
From defendant, Alpha Ralphsnyder .......... ........ 636 64
From defendant, Elizabeth Jane Youst............. 106 10
From defendant, John Youst...... .... .............. 53 05

" Therefore, it is adjudged, ordered and decreed, that the plaintiff recover against the defendant, William Ralphsnyder, the said sum of $636.64, so due from him as aforesaid, with interest thereon from the said 18th August, 1876, until paid.

"And it is further adjudged, ordered and decreed, that the said plaintiff recover against the defendant, Alpha Ralphsnyder, the sum of $636.64, so due from him as aforesaid, with interest thereon from the said 18th August, 1876, until paid.

"And it is further adjudged, ordered and decreed, that the said plaintiff recover against the said defendant, Elizabeth Jane Youst, the sum of $106.10, so due from her as aforesaid, with interest thereon from the said 18th August, 1876, until paid.

"And it is further adjudged, ordered and decreed, that the said plaintiff recover against the said defendant, John Youst, the sum of $53.05, so due from him as aforesaid, with interest thereon from the said 18th day of August, 1876.

"And it is further adjudged, ordered and decreed, that the plaintiff recover against the said William Ralphsnyder, Alpha Ralphsnyder, Elizabeth Jane Youst and John Youst, her costs by her in this suit expended, that is to say : Of the said William Ralphsnyder, two fifths part of said costs ; of the said Alpha Ralphsnyder, two fifths of said costs ; of the said Elizabeth Jane Youst, one fifteenth of said costs; and of the said John Youst, one thirtieth part of said costs; and the said plaintiff may have execution for all and each of said recoveries against the goods and chattels of said parties respectively. And leave is reserved to the plaintiff upon the footing of this decree, on reasonable notice to the parties, to apply to the court for such further decree against the defendants, or either of them, for her maintenance and support for any subseqent years, whilst she remains unmarried, as she may show herself entitled to."

Alpha and William Ralphsnyder obtained an appeal from and *supersedeas* to that decree.

*P. H. Keck* and *R. L. Berkshire,* for appellants, cited the following authorities:

9 W. Va. 433 ; 1 Rob. 333 ; 23 Gratt. 802 ; 24 Gratt. 256 ; 6 W. Va. 24 ; 23 Gratt. 42 ; 6 W. Va. 79, 185 ; 10 W. Va. 236 ; Code p. 460, § 2.

*A. J. Clarke,* for appellee, cited the following authorities :

Story Eq. Jur. § 457 ; 1 Chit. Pl. (16 Am. ed. 1876) 3 ; 12 Pick. 554 ; 12 Metc. 167 ; 13 Mass. 405 ; 12 Leigh 204, 226 ; 6 E. C. L. 139 ; 4 Munf. 219 ; 2 Rob. (old) Pr. 277 and cases cited ; 1 Story Eq. Jur. §§ 478, 479 ; *Id.* 457.

MOORE, JUDGE, delivered the opinion of the Court:

It is urged by the appellants as the first ground of error, that the complainant had a plain and full remedy at law, and that a court of equity had no jurisdiction in

the premises, therefore the demurrer to the bill should have been sustained.

It is true, that under the Code of 1868, chapter seventy one, section two, the complainant, Catharine Ralphsnyder, might have maintained in her own name an action on the bond ; and of course the administrator of John M. Ralphsnyder could at common law have maintained an action thereon for her benefit ; but that does not deprive Catharine from pursuing the more complete and perfect remedy, which the forum of equity has ever afforded to the beneficiary in such bond. Although Catharine was not a party to the transaction, that induced her parents to convey their property to their sons and to take the bond payable to the father alone, but upon conditions that made Catharine a beneficiary, equitable rights were conferred upon her, which could be more adequately and completely enforced in a court of equity than at law. One suit in equity convened all parties in interest, so that without a multiplicity of suits their conflicting liabilities could be adjusted, and, as said in aagument, thus a final decree could cover all questions of account, contribution and final settlement between them. This course was the more advisable too, because Aaron, one of the obligors, was dead, his estate probably settled up, which, if an action at law had been pursued, would have necessitated a suit in chancery, as in *Bower* v. *Glendening,* 4 Munf. 219.

Viewing the cause upon the principles laid down in *Ross* v. *Milne,* 12 Leigh 204, and *Bradford* v. *Stuckey,* 6 Eng. C. L. 139 ; and the elementary authorities, 1 Chit. Pl. 3 (16 Am. ed.) ; 1 Rob. Pr. (old) 277 ; 1 Story Eq. Jur. §§ 478, 479 and 457, equity has jurisdiction in such cases, and the court did not err in overruling the demurrer.

It is assigned as the second ground of error, that the court held the appellants liable for the boarding, clothing and support of complainant *after* the death of the father and mother, and they argue, that the true construction

of said bond, taken in connection with the bond of the same date made by appellants and Aaron Ralphsnyder to their mother, and the other circumstances and facts of the case, " would bind the obligors to support the unmarried sisters until they should marry, *or* until the death of the father and mother, whichever should happen first."

It is the contract, that was made with the father, who was conveying all his property, real and personal, to his sons, with the intention thereby to make provision for the support and maintenance, not only of himself and wife, but also of his three daughters, and not the dower contract the sons made with their mother, and which it does not appear was known to or acquiesced in by the father, that is to govern in this case, and to be construed.

The language of the bond to be construed is, " for maintenance and support of the said John M. Ralphsnyder, Elizabeth Ralphsnyder and their three sisters *until they get married*, and at which time to furnish each one of them," &c; also, " to keep the said John M. and Elizabeth Ralphsnyder, their parents, in the peaceable and quiet possession of the house and lot and garden and other buildings, where they now reside, for and during their natural life;   *   *   *   *   and in all things to provide fully for the comfortable support of their parents *and family* as amply as they have heretofore been in the habit of living."

It is not difficult to understand what the parties intended. Certainly they could not have meant the marriage of father and mother, by the expression, " *until they get married*, because they were then married ; but the sisters being single, and their maintenance being part of the consideration of the contract, it is obvious, the father intended that the sons should maintain and support their sisters in the style designated, until the sisters married, and not merely until the death of the parents. Surely, after the whole property, real and personal, had been taken from the sisters and given to the

brothers, it is not reasonable to suppose that it was intended to cast the sisters upon the cold charity of the world, after the grave had closed over the protecting arms of their parents. It was at that time they would most need support from their brothers; and their father evidently intended thus to provide for it; and Aaron, in his will, manifests that such was his understanding of the contract, by making provision therein to meet it. The contract is not ambiguous, but plain; and the appellants must abide by it. The court did not err in so interpreting the contract.

The third ground of error relied on is, that the court did not sustain the exceptions to the commissioner's report. Those exceptions are substantially the same as the grounds of error assigned by appellants to the decree appealed from, and our consideration of those grounds of error answers the objections to the report, and approves the ruling of the court below. But in this assignment of error it is urged, that it was not contemplated that the complainant should be boarded, and clothed, and supported by the obligors, wherever she might choose to go.

As the parents, under the contract, had the right to the peaceable and quiet possession of the house, &c., "*during their natural life*," the house, &c., under the deed having been conveyed to one of the brothers, that brother upon the death of the parents was entitled to immediate possession and absolute control thereof. Hence Catharine had no right in or to the house thus conveyed to her brother; all that she could demand was, that which was intended her by the contract; and if that was not given her, she had her remedy, as has been shown; but I see nothing in the contract, and there is nothing in the law, that compels her to be subservient to the caprice, whim or *dictum* of her brothers, and be forced to live in this or that house, or at this or that place. She had a right to demand of her brothers support and maintenance to an extent as comfortable and ample as

she had before the making of the contract been in the habit of having,—nothing more, and should be nothing less, and that is all she sought in this cause.

It is held in the fourth assignment of errors, that "if the appellants were liable at all, the question between them and the plaintiff was fairly and fully settled by arbitration, as disclosed by the record."

It is true, the record discloses an imperfect and informal attempt at adjustment of the matters between the parties; but no formal and legal arbitrament and award was ever made. The answer of appellants states, that the matter of her maintenance and support was by agreement submitted to the judgment and award of Jesse Thorn, Silas Wisman and Abner Barnheart, who considered the matter "and awarded and adjudged, that respondents and said Aaron's estate should pay plaintiff $125.00 *per annum* from her father's death in lieu of said maintenance and support, of which sum respondents were to pay $50.00, and the estate of Aaron $25.00, the said amount to be paid in quarterly installments, &c." The complainant replies, that she agreed to abide by the decision of the arbitrators as to the amount defendants should pay for her support, although the sum was inadequate to supply her necessities, but that the defendants refused to pay that amount, and finally refused to pay anything. The depositions of both Wisman and Thorn show, that there was no legal arbitration, and no such an award as was absolutely binding on either party ; and the pleadings show at least an ignoring, and we may say a willingness on the part of all parties to treat the action of the so called arbitrators as of no binding force; and the depositions of Fetty, John Youst, Elizabeth Youst and of the complainant and the defendant, William Ralphsnyder, show conclusively, that complainant refused to consider the adjustment made by Thorn, Wisman and Barnheart in any other light than a mere settlement of the amount of her support and maintenance for one year only ; and that she accepted the $125.00 for

1880
Special Term.

Ralphsnyder
v.
Ralphsnyders. that year only, but refused to accept it any longer than that year, because she considered it inadequate; and that she was only paid for the one year is testified to by the defendant William himself.

Thus viewing the case, as presented by the record, the decree complained of must be affirmed, with costs and damages according to law.

JUDGES GREEN AND JOHNSON CONCURRED.

DECREE AFFIRMED.