## REEDER, Adm'x, v. EMPLOYEES HOSPITAL ASS'N, etc.

No. 19176.    Opinion Filed Oct. 1, 1929.

Woodson E. Norvell, for plaintiff in error.

J. H. Grant and Kleinschmidt & Johnson, for defendant in error.

REID, C. We will refer to the parties to this action as they stood in the trial court. The plaintiff brought suit to recover upon a bond given to it by Robert C. Towers and Bertha Towers, as principals, with Charles L. Reeder, deceased, as surety; the action being against Jessica B. Reeder, as administratrix of his estate.

The defendant demurred generally to plaintiff's petition. and upon the demurrer being overruled, the defendant excepted and refused to plead further, whereupon judgment for the amount sued for was entered for the plaintiff, and the defendant appealed.

The petition alleged the corporate existence of the plaintiff, and stated that, on the 18th day of November, 1925, the plaintiff, as the then lessee of the City Hospital in Sapulpa, Okla., entered into a written contract with Robert C. Towers and Bertha Towers, whereby the hospital property, appurtenances, and furnishings were sublet to them for $250 per month rental; and that to secure performance of the contract, the sublessees executed an indemnity bond at the same time, with Charles L. Reeder as surety thereon, in the sum of $5,000. It was further alleged that the sublessees failed to pay the rentals to plaintiff in accordance with the contract, and there was due thereon the sum of $1,322.33, which was shown by an itemized statement attached to the petition and which it was alleged had been presented to the defendant administratrix and disallowed; and plaintiff prayed for judgment for the amount of the balance of the rents so due. A copy of the sublease contract entered into by the plaintiff and the Reeders was attached as an exhibit to the petition and made a part thereof. The paragraph in the sublease providing for the bond is in the following language:

"Parties of the second part agree to furnish to party of the first part an indemnity bond in the sum of $5,000 with good and sufficient surety, indemnifying said party of the first part against any loss or damage suffered by the said party of the first part by virtue of the subletting of the premises and property hereinbefore described."

And on a copy of the sublease is shown the approval thereof and consent of the city of Sapulpa to the subleasing of its hospital property to the Towers.

Also, there is attached as an exhibit to the petition what is designated as a bond of indemnity signed by the sublessees, as principals, and C. L. Reeder, as surety, made to this plaintiff, binding the principals and surety to the plaintiff in the amount of the bond, and with this further stipulation:

"The condition of the above obligation is such that, whereas, on the 18th day of November, 1925, a contract was entered into by the Employees Hospital Association of the Oklahoma Union Railway Company, a corporation, as party of the first part and the above bounden Robert C. Towers and Bertha Towers, as parties of the second part, whereby the said parties of the first part subleased to the said parties of the second part, certain premises in the city of Sapulpa, Okla., known as the City Hospital, and cer-

tain personal property used in connection therewith subject to the terms and conditions of the original lease contract executed by the city of Sapulpa on March 22, 1924, to the said Employees Hospital Association of the Oklahoma Union Railway Company. a corporation, said contract of sublease being conditioned upon the furnishing by the said parties of the second part of a bond of indemnity in the sum of $5,000 guaranteeing the faithful performance of the terms and conditions thereof and protecting the said party of the first part from any and all liability in the operation of said premises and property, aforesaid.

"Now, therefore, if the said Robert C. Towers and Bertha Towers and each of them shall hold the said Employees Hospital Association of the Oklahoma Union Railway Company, a corporation, harmless from any and all damages or liability on account of the operation of the premises and property described in the contract subleasing the same, dated November 18, 1925, and shall, in all respects, protect the said Employees Hospital Association from any and all judgment, claim, liability, or expense on account thereof, then the above obligation is to be void, otherwise to remain in full force and effect."

The sole question presented by the defendant's demurrer was whether the bond sued on was sufficient in its terms to guarantee payment of the rents which became due monthly under the sublease contract.

In determining the liability of the defendant in this case on the bond executed by her decedent, we shall consider the decedent as an ordinary surety and construe the instrument accordingly.

In the case of Klein v. Beers, 95 Okla. 80, 218 Pac. 1087, this court had under consideration the rules governing the construction and interpretation of a building contractor's bond as applied to the liability of the surety and on the question there said:

"In construing the terms of the bond, we must bear in mind that the sureties on this bond are individuals and the bond is to be construed according to the provisions of section 1052, Rev. Laws 1910, which is as follows:

"'A surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach, he cannot in any case be liable for more than the penalty.'

"Section 1053, Rev. Laws 1910, provides:

"'In interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts.'

"In Dolese Bros. v. Chaney & Rickard, 44 Okla. 745. 145 Pac. 1119, we said:

"'After a contract of suretyship is interpreted and the intelligible meaning of its language is ascertained, it will be construed and applied strictly in favor of the surety and without allowance of an implication against him.'

"But in applying this rule of strict construction, we must have in mind what is meant by the rule, and this is clearly stated in 21 R. C. L., sec. 28, as follows:

"'In brief, by strict construction of a contract of suretyship is meant that the obligation of a surety must not be extended to any other subject, to any other person, or to any other period of time than is expressed or necessarily included in it; but the rule in no way interferes with the use of the ordinary tests by which the actual meaning or intention of contracting parties are primarily determined. Despite the rule, the courts, in endeavoring to ascertain the precise terms of the contract actually made by a surety, may resort to the same aids and invoke the same canons of interpretation which apply in case of other contracts, and they are not required to put a strained construction on the plain words of a bond in order that the sureties may escape liability. What is demanded is merely that the sureties are not to be bound by implication, or beyond the extent to which they have obligated themselves in the execution of the bond.'"

The rules by which the bond should be interpreted and the liability of the surety arrived at are well stated in the following paragraphs:

"The entire instrument is what expresses the actual contract, therefore, the whole writing must be considered and regard must be had to all its parts so that the intention may, if possible, be gathered therefrom." 5 Cyc. 754, citing, Mallers v. Crane Co. (Ill.) 60 N. E. 804; Gordon v. Rainey, 19 N. C. 487; Bennehan v. Webb, 28 N. C. 57.

"In case of ambiguity or doubtful construction, the obligation should be construed in the light of the circumstances surrounding the execution of the bond, the object to be accomplished, the situation of the parties, the relation existing, and the evident intention of the parties in making the bond. So the nature of the duty of the obligor and the character of the obligee must also be regarded as explanatory of the intent." 5 Cyc. 754, citing: Strawbridge v. B. & O. R. R. Co., 14 Md. 360, 74 Am. Dec. 541; Juliaetta Tramway Co. v. Vollmer (Idaho) 39 Pac. 1115; Ralphsnyder v. Ralphsnyder, 17 W. Va. 28; Tomlinson v. Ousatonic Water Co., 44 Conn. 99.

"It may be generally stated that a bond may incorporate, by reference expressly made thereto, other contracts, papers, or written instruments, or it may be conditioned for the performance of certain specific agreements set forth in such instruments, so as to

embody the same therein as a part of the obligation thereof with all the stipulations, limitations or restrictions mentioned in the referred-to papers, in which case the bond and the papers referred to should be read together and construed as a whole, although if only specific parts of another contract be referred to, only so much of said writing is incorporated as is evident the parties intended to embody or rely upon." 5 Cyc. 757, citing: Weed S. M. Co. v. Winchel, 7 N. E. (Ind.) 881; Victor Sewing Machine Co. v. Crockwell et al. (Utah) 1 Pac. 470.

Bearing in mind the foregoing rules, which we are authorized to observe in construing the bond, let us see what the petition and the exhibits attached thereto, which are a part of it, allege and show on the question whether the bond guaranteed the payment of the rents.

The city of Sapulpa was the owner of the hospital, together with its fixtures, furnishings, etc., including the nurses home, likewise equipped, and also the servant quarters. This property had been leased to the plaintiff for a term not then expired. With the consent of the city, the lessee, plaintiff, subleased the property to the Towers for the remainder of the term. Among other provisions in the sublease contract, it was stipulated that the Towers were to pay $250 rental monthly and in advance, operate the property in conformity with the original lease contract with the city, and return the property to the lessee at the expiration of the contract in as good condition as it then was, ordinary wear and tear excepted; and pay for any personal property not returned, at the inventory price then made. The sublease further provided that the lessees thereunder would give a bond indemnifying the sublessor against any loss or damage suffered by the subletting of the premises and property. And the bond sued on shows upon its face that it was made with particular reference to and in compliance with the agreement contained in the sublease contract, and which we have seen states that:

"* * * Said contract of sublease being conditioned upon the furnishing by the said parties of the second part of a bond of indemnity in the sum of $5,000 guaranteeing the faithful performance of the terms and conditions thereof and protecting the said party of the first part from any and all liability in the operation of said premises and property, aforesaid."

This recital clearly shows that the bond was given for the purpose of guaranteeing that the sublessees would perform all the conditions of their contract, and certainly payment of rents was one of the main, if not the most important, one of the obligations on their part. The subsequent paragraph of the bond does not so clearly cover the payment of rents; but, as we are required to do, and looking to the entire instrument as well as invoking the sublease contract in interpreting the bond, and considering all the circumstances surrounding the execution of the bond, it is clear that the parties to the bond must have understood and intended to cover every liability that the sublessees incurred by the terms of the sublease contract. We can see no good reason why the parties would contract as against contingent damages or liabilities for which the sublessees might never be liable to the sublessor, and then fail to agree that the surety should be bound for payment of the rents, which were sure to accrue each month.

So that construing the bond in its entirety, and in the light of the circumstances surrounding its execution as reflected by the contract, it is our conclusion that it was intended by the parties to secure the payment of the rents, as well as other items of liability which might accrue under the contract.

It follows that the judgment of the trial court should be affirmed.

FOSTER, LEACH, HERR, and BENNETT, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 27 L. R. A. (N. S.) 573; 12 A. L. R. 382, 721; 21 R. C. L. p. 976; 4 R. C. L. Supp. p. 1440; 5 R. C. L. Supp. p. 1179; 6 R. C. L. Supp. p. 1297; 7 R. C. L. Supp. p. 726. See "Landlord and Tenant." 36 C. J. § 1100, p. 306, n. 75.